OPINION
The appellant, Stephanie B. Dawson fka Stout ("the appellant"), appeals the decision of the Union County Court of Common Pleas, terminating a planned parenting agreement and naming the appellee, John Charles Stout ("the appellee"), the residential parent and legal custodian of Nathan Stout, Trevor Stout, and Kylie Stout.
The pertinent facts and procedural history of the case are as follows: The parties were granted a dissolution of their marriage on September 1, 1998. At the request of the parties, a shared parenting plan was adopted that pertained to the three minor children born during the course of the marriage. Pursuant to that agreement, the children spent roughly equal time with each parent, although the appellant was the residential parent for school placement purposes.
The appellant married her current husband, Tim Dawson ("Mr. Dawson"), in May of 1999. Some time at the beginning of her marriage to the appellee, the appellant had an affair with Mr. Dawson. In August of 1999, Mr. Dawson filed a motion to be joined as a third party defendant to proceedings before the court for reallocation of parental rights and responsibilities. Mr. Dawson's motion was based on his desire to be acknowledged as the biological father of Nathan Stout, the first child born during the parties' marriage. On September 17, 1999, the court denied Mr. Dawson's motion, terminated the shared parenting plan, and adopted a new plan. Under paragraph 19 of the new shared parenting plan, Mr. Dawson was named a Significant Person pursuant R.C. 3109.051
with regards to Nathan. In exchange, Mr. Dawson agreed to file no paternity suit and all the parties agreed not to reveal Nathan's true parentage to him until he reaches the age of majority.
In April of 2000, the appellant filed a 60(B) motion for relief from judgment, specifically requesting the court to set aside paragraph 19 of the shared parenting plan on the basis of genetic testing that revealed Mr. Dawson to be Nathan's biological father. In a June 30, 2000 judgment entry, the court denied the 60(B) motion but ordered that paragraph 19 be stricken, stating that Mr. Dawson was free to pursue a paternity action in juvenile court.
The record indicates that the events that gave rise to the cause currently before this Court revolve largely around a decision to inform Nathan of his true parentage. At some point the appellant began taking Nathan to a psychologist to determine whether the child could handle the knowledge that his biological father is Mr. Dawson. Apparently, Nathan's two psychologists determined that he should be told the truth. Consequently, this information was disclosed to him during a counseling session. Upon discovering that Nathan had been informed that the appellee was not his biological father, the appellee moved the court for an emergency order staying all visitation/companionship between the appellant and the parties' three minor children. He later moved for a reallocation of parental rights and responsibilities, which requested that the shared parenting plan be terminated and that he be named the children's sole residential parent and legal custodian.
In an August 31, 2000 pre-trial order, the magistrate terminated the shared parenting agreement, finding that it was no longer in the best interest of the children. After a hearing on the allocation of parental rights and responsibilities, the magistrate issued a decision that granted the appellee's motion, naming him sole residential parent and legal custodian of the three children. The appellant timely filed objections to the decision. After hearing additional testimony, the trial court essentially affirmed that magistrate's decision by terminating the shared parenting plan and naming the appellee residential parent and legal custodian.
The appellant now appeals, asserting three assignments of error for our review.
ASSIGNMENT OF ERROR NO. I
 The trial court erred when the trial court judge reviewed and relied on upon testimony contained in a transcript of a hearing previously conducted by the trial court magistrate.
The appellant argues that the trial court erred in relying on evidence presented at the hearing before the magistrate in rendering his judgment, in spite of the fact that he ordered a re-hearing of the matter and informed the parties that evidence presented to the magistrate would not be considered.
The record reveals that the trial court entered a Notice of Hearing on December 15, 2000 that set a date for rehearing of the appellee's motion and of the findings contained in the magistrate's decision. On the day of the hearing, the trial court requested that the parties stipulate to the evidence presented at the prior hearing. When the appellant refused to stipulate, the court stated that it would not go back and review the record.
Civ.R 53(E)(4)(b) presents a variety of options for disposition of objections to a magistrate's decision. Specifically, it states:
 The court may adopt, reject or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.[1]
The appellant contends that the options of "hearing additional evidence" and "hearing the matter" are separate and distinct from each other, and that the trial court must choose between these options. Therefore, when the trial judge entered an order of rehearing, he was subsequently foreclosed from considering any testimony given at the prior magistrate hearing. In support of her argument, the appellant cites to the Staff Note from the 1975 amendment to Civ.R. 53, which reads in relevant portion:
 The options of the court are restated with the explicit addition that the court may hear the matter, that is, the matter referred to the referee, as though it had never been referred. Such an option was always implicit in the procedure.
A trial court may not be reversed for failure to comply with Civ.R. 53 unless the appellant shows that the alleged error has merit and that it prejudiced the appellant.[2] Upon a thorough review of the transcripts from both the magistrate's and the trial court's hearings, it appears that the appellant was not prejudiced in any way by the trial judge's decision to rely in part on testimony from the former hearing. In support of its findings, the court cites exclusively to the transcript from the magistrate's hearing only twice in its judgment entry. There is no evidence that the appellant was prejudiced by the trial court's reliance on the former transcript in either of these instances because it does not appear that the facts cited were deciding factors in the trial court's decision.
The appellant also assigns error to the trial court's taking judicial notice of the prior transcript and the magistrate's decision. However, a court may take judicial notice of prior proceedings in the same immediate case.[3]
Accordingly, the appellant's first assignment of error is overruled.
ASSIGNMENT OF ERROR NO. II
 The trial court erred when it concluded that an appropriate change of circumstances had occurred which allowed the court to exercise its modification jurisdiction.
The appellant contends that the trial court erred in finding that the evidence presented by the appellee established that a change in circumstances occurred which was sufficient to allow the court to modify the shared parenting agreement pursuant to R.C. 3109.04(E). The appellant's argument in this assignment of error is two-fold. Not only does she challenge the weight and sufficiency of the evidence, she also argues that R.C. 3109.04(E) requires the trial court to find not only a change in circumstances, but one that had an adverse effect on the children. For the following reasons, we agree with the appellant.
The appellant cites generally to R.C. 3109.04(E) in support of her proposition. For his part, the appellee argues that the code section at issue here is R.C. 3109.04(E)(2)(c), which deals with termination of a prior shared parenting decree.[4] According to the appellee, this section does not require the court to find a change of circumstances. However, we have previously held that subsection (c) of R.C. 3109.04(E)(2)
 is subordinate to the general provision of R.C. 3109.04(E)(1)(a) requiring that either a change in the parents' or children's circumstances be found, or that previously unknown circumstances be revealed, and that any modification be found to be in the best interests of the children before any custody modification may be ordered.[5]
Therefore, we agree with the appellant that the trial court was required to make a finding that a change in circumstances had occurred before terminating the shared parenting decree.
At the outset, we note that a trial court's determination that a change in circumstances has occurred will not be disturbed absent a showing of abuse of discretion.[6] A finding of abuse of discretion requires evidence that the decision of the trial court was unreasonable, arbitrary, or unconscionable.[7] To that end, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct.[8] "Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by the reviewing court."[9] Despite this extensive deference, the discretion of the trial court is not absolute "and must be guided by the language set forth in R.C. 3109.04."[10]
Courts must determine three things when deciding whether modification of custody is appropriate.[11] The threshold determination, and the one relevant to this assignment of error, is whether there has been a change in circumstances.[12] The intent of this provision is to "spare children from a constant tug of war between their parents who would file a change of custody each time the parent out of custody thought he or she could provide the children a `better' environment."[13] Accordingly, although R.C. 3109.04 does not define "change of circumstances," courts have generally held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child."[14] This Court has noted that the change must be substantial, not slight or inconsequential.[15]
The trial court's journal entry cites numerous changes in circumstances. These changes include that both appellant and appellee have remarried, that the appellant and Mr. Dawson now have a child together, that Mr. Dawson exhibited aggressive behavior towards the appellee in the presence of the children, that companionship schedules have been disrupted, that the children's doctors and schools were changed, and that Nathan was informed that Mr. Dawson is his biological father. Although we concede that the trial court cites to numerous changes, its journal entry makes no findings as to the effect these changes have had on the children. This is not surprising in view of the fact that a thorough review of the record in this case reveals that it is virtually devoid of evidence regarding what impact, if any, these changes have had on the three Stout children.[16] Thus, we conclude that the trial court erred in failing to find a change of circumstances which had a material and adverse effect on the children.
Accordingly, the appellant's second assignment of error is sustained.
ASSIGNMENT OF ERROR NO. III
 The trial court erred when it concluded that it would be in the best interest of the children to terminate the shared parenting plan.
In her final assignment of error, the appellant contends that the trial court abused its discretion when it determined that terminating the shared parenting plan was in the best interest of the children. Based on the following, we agree with the appellant.
After determining that a change in circumstances has occurred that is sufficient to warrant modification of the shared parenting plan the court must then determine whether modification is in the best interests of the child. R.C. 3109.04(F)(1)(a)-(j) set forth a non-exhaustive list of factors that the trial court must consider when making this determination. In the instant case, the trial court made no findings of fact with regards to the best interests of the children. Rather, the journal entry simply lists the statutory factors. Modification of a prior decree allocating parental rights and responsibilities under R.C.3109.04(E) requires that the trial court make specific findings of fact to support its decision.[17] Although we have previously held that it is possible to substantially comply with this requirement,[18] we cannot say that the trial judge in this case even substantially complied, given the other omissions in the judgment entry.
Accordingly, the appellants third assignment of error is sustained.
Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
SHAW and BRYANT, JJ., concur.
[1] Civ.R. 53(E)(4)(b).
[2] Skaggs v. Skaggs (Dec. 4, 1997), Marion App. No. 9-97-18, unreported, quoting In re Estate of Hughes (1994), 94 Ohio App.3d 551,554.
[3] See State v. Velez (1991), 72 Ohio App.3d 836, 838, citingDiversified Mtge. Investors, Inc. v. Athens Cty. Bd. of Revision
(1982), 7 Ohio App.3d 157, 159.
[4] R.C. 3109.04(E)(2)(c) states in relevant portion:
 The court may terminate a prior final shared parenting decree that includes shared parenting plan approved under division (D)(1)(a)(i) of this section upon the request of one or both of the parents or whenever it determines that shared parenting is not in the best interest of the children.
[5] Inbody v. Inbody (June 5, 1995), Hancock App. Nos. 5-94-37 5-94-46, unreported; Clyborn v. Clyborn (1994), 93 Ohio App.3d 192,195.
[6] Davis v. Flickinger (1997), 77 Ohio St.3d 415.
[7] Leigh v. State Emp. Relations Bd. (1996), 76 Ohio St.3d 143,144.
[8] Miller v. Miller (1988), 37 Ohio St.3d 71, 74.
[9] Davis, 77 Ohio St.3d at 418.
[10] Baxter v. Baxter (1971), 27 Ohio St.2d 168, 271 N.E.2d 873;Palladino v. Palladino (1971), 27 Ohio St.2d 175, 271 N.E.2d 826.
[11] Thatcher v. Thatcher (Oct. 6, 1997), Mercer App. No. 10-97-08, unreported, citing In re Kennedy (1994), 94 Ohio App.3d 414.
[12] Id. The other two factors that the court must determine before modifying custody are whether modification is in the best interests of the child and whether the harm that will result from the change will outweigh the resultant benefits. Id. Although the appellant only challenges the trial court's disposition with regards to the first two factors, we note that Davis v. Flickinger, supra, at 417, holds that the record must support all three of these conclusions or the custody modification is contrary to law.
[13] Wyss v. Wyss (1982), 3 Ohio App.3d 412.
[14] Rohrbaugh v. Rohrbaugh (2000), 136 Ohio App.3d 599, 604-605, citing Wyss v. Wyss (1982), 3 Ohio App.3d 412; see, also, Hetterich v.Hetterich (April 9, 2001), Butler App. No. CA2000-06-122, unreported.
[15] Musson v. Musson (June 10, 1998), Hardin App. No. 6-98-01, unreported, citing Davis, 77 Ohio St.3d at 418.
[16] Although there was some scant, conflicting testimony in the transcript regarding Nathan's emotional state since being informed of his relationship to Mr. Dawson, no evidence was presented regarding the state of mind of the other children. In fact, the record makes it obvious that the entire dispute arises out of and centers around the incident involving Nathan.
[17] Specifically, R.C. 3109.04(E)(1)(a) states:
 The court shall not modify a prior decree allocation parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, * * * that the modification is necessary to serve the best interest of the child. (emphasis added).
[18] See e.g., Neeley v. Neeley (June 16, 1995), Allen App. No. 1-94-70, unreported.